B. J. Martin and Auline Martin, et al. [1] v. Commissioner. Martin v. Commissioner
Docket Nos. 63808, 63832, 94362, 94363. .
United States Tax Court
T.C. Memo 1964-25; 1964 Tax Ct. Memo LEXIS 312; 23 T.C.M. (CCH) 123; T.C.M. (RIA) 64025; January 31, 1964
*312 Held: (1) That all petitioners understated their taxable income for the years 1949, 1950 and 1951 by overstating expenses. (2) That some part of the deficiency in income tax of petitioners Paul A. and Mary L. Martin, for the years 1949 to 1951, inclusive, was due to fraud with intent to evade taxes and that the assessment and collection of the deficiencies and additions to tax determined against them are not barred by the statute of limitations. (3) That petitioners Paul A. and Mary L. Martin have failed to prove error on the part of respondent in determining additions to tax provided under sec. 294(d)(2), Code of 1939, for 1950 and have failed to prove error on the part of respondent in determining additions to tax provided by sec. 294(d)(1)(A), Code of 1939, for 1951. (4) That respondent has failed to prove fraud with respect to the years 1949-1951, inclusive, on the part of petitioners B. J. and Auline Martin and that assessment and collection of deficiencies in tax and additions to tax for the years 1949 and 1950 are accordingly barred. (5) That petitioners B. J. and Auline Martin have failed to prove error on the part of respondent in determining deficiency and additions *313 to tax (except under section 293(b)) for the year 1951. Sidney T. Schell, 1105 Fulton National Bank Bldg., Atlanta, Ga., for the petitioners. Ford P. Mitchell, for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies in income tax and additions to tax against petitioners for the years and in the amounts as follows: B. J. Martin and Auline Martin
Additions to Tax, I.R.C. 1939
Docket
Sec. 294
Sec. 294
No.
Year
Deficiency
Sec. 293 (b)
(d)(1)(A)
(d)(2)
94362
1949
$ 9,429.14
$4,714.57
1950
14,616.08
7,308.04
$1,603.92
63808
1951
1,177.06
588.53
$92.16
61.43
Paul A. Martin and Mary L. Martin
94363
1949
$ 9,429.14
$4,714.57
1950
14,616.08
7,308.04
$1,603.92
63832
1951
1,177.06
588.53
$92.16
61.43
*314 The cases were consolidated for hearing pursuant to agreement of the parties. The issues for decision are: (1) Whether the petitioners understated their taxable income for the years 1949, 1950, and 1951. (2) Whether any part of each deficiency in income taxes for the years 1949 to 1951, inclusive, was due to fraud with intent to evade taxes, and whether the assessment and collection of the deficiencies for the years 1949 and 1950 are barred by the statute of limitations; and (3) Whether petitioners have demonstrated error on the part of respondent in determining additions to tax for the year 1950 under section 294(d)(2), Code of 1939, and additions to tax for the year 1951 under section 294(d)(1)(A), Code of 1939. Respondent concedes the addition to the tax for the year 1951 under the provisions of section 294(d)(2), Code of 1939, in Docket Nos. 63808 and 63832. Findings of Fact Some of the facts are stipulated and are incorporated herein by reference. Petitioners, Paul A. Martin (hereinafter sometimes referred to as Paul) and Mary L. Martin, are husband and wife and lived at 274 McAfee Road, Decatur, Georgia, during part of 1949 and at 3159 Tilson Road, Decatur, *315 Georgia, from November 1949 through 1955, and filed timely joint Federal income tax returns with the collector of internal revenue, Atlanta, Georgia, for the taxable years 1949, 1950, and 1951. Petitioners, B. J. Martin (hereinafter sometimes referred to as B. J.) and Auline Martin, are husband and wife and lived at 274 McAfee Road, Decatur, Georgia, during part of 1949 and at 3175 and 3151 Tilson Road, Decatur, Georgia, from November 1949 through 1953 and filed timely Federal joint income tax returns with the collector of internal revenue, Atlanta, Georgia, for the taxable years 1949, 1950, and 1951. Paul A. Martin is the adopted son of B. J. Martin. Paul A. Martin and B. J. Martin were partners in a partnership known as Paul A. and B. J. Martin (hereinafter sometimes referred to as partnership No. 1) during the taxable year 1949. Paul A., Mary L., B. J., and Auline Martin were partners in a partnership known as Martin and Martin (hereinafter sometimes referred to as partnership No. 2) during the years 1950 and 1951. The only active members of partnership No. 2 were Paul and B. J. The principal offices of the two partnerships were at 274 McAfee Road, Decatur, Georgia, during *316 part of 1949 and at 3159 Tilson Road, Decatur, Georgia, from November 1949 through 1951. Timely partnership returns were filed for partnership No. 1 for the taxable year 1949 and for partnership No. 2 for the taxable years 1950 and 1951 with the collector of internal revenue, Atlanta, Georgia. The principal business of both partnerships during 1949 and 1950 was the building of residential houses for sale and the principal business of partnership No. 2 during 1951 was the building of two duplex houses for rental purposes. The partnership agreement of Martin and Martin was recorded in DeKalb County, Georgia. No dissolution agreement or settlement agreement of Martin and Martin has been recorded in Georgia. Partnership No. 1 built 38 houses in 1949 and sold 36 of them in that year for a total sales price of $347,200. Thirty-two of the houses sold for $9,750 each and 4 of the houses sold for $8,800 each. Partnership No. 1 reported total gross receipts for 1949 of $347,450. The additional $250 was from minor miscellaneous income. In 1948 a six-acre tract of land fronting on McAfee Road and adjoining a tract of land owned by J. W. Toney was purchased from the wife of Gustaf B. *317 Borg for $3,500. The deed was taken in the name of B. J. Martin. Partnership No. 1 developed 18 lots from this tract of land. In 1949, partnership No. 1 paid Toney $2,705 for one-half the cost of paving and curbing the street which separated the six-acre tract purchased from Borg's wife and the tract owned by Toney which also consisted of 18 lots. Later the same year partnership No. 1 purchased this land from for sale and the principal business of partnership No. 2 during 1951 was the building of two duplex houses for rental purposes. The partnership agreement of Martin and Martin was recorded in DeKalb County, Georgia. No dissolution agreement or settlement agreement of Martin and Martin has been recorded in Georgia. Partnership No. 1 built 38 houses in 1949 and sold 36 of them in that year for a total sales price of $347,200. Thirty-two of the houses sold for $9,750 each and 4 of the houses sold for $8,800 each. Partnership No. 1 reported total gross receipts for 1949 of $347,450. The additional $250 was from minor miscellaneous income. In 1948 a six-acre tract of land fronting on McAfee Road and adjoining a tract of land owned by J. W. Toney was purchased from the wife *318 of Gustaf B. Borg for $3,500. The deed was taken in the name of B. J. Martin. Partnership No. 1 developed 18 lots from this tract of land. In 1949, partnership No. 1 paid Toney $2,705 for one-half the cost of paving and curbing the street which separated the six-acre tract purchased from Borg's wife and the tract owned by Toney which also consisted of 18 lots. Later the same year partnership No. 1 purchased this land from Toney for $15,300. Toney was paid from the proceeds of sale of the houses built on the land he sold the partnership as each house was sold. The 36 houses sold by the partnership in 1949 were built on the 36 lots purchased from Borg and Toney. The two houses which were built by partnership No. 1 in 1949, but not sold in that year, were the two homes of the petitioners located at 3159 and 3175 Tilson Road, Decatur, Georgia. These houses were located some distance away from the tract of land on which the 36 other houses were built. Paul owned the lot at 3159 Tilson Road and B. J. owned the lot at 3175 Tilson Road. These two houses contained facilities such as washing machines, venetian blinds, built-in breakfast suites, forced air furnaces and garages, which were *319 not installed in any of the other 36 houses built by partnership No. 1 in 1949. The entire cost of these two houses was charged to partnership expenses and was claimed as expenses on partnership No. 1's return for 1949. The petitioners did not keep separate records or segregate the cost of any of the 38 houses which were built by partnership No. 1 in 1949. The cost of constructing the two Tilson Road houses was approximately $10,000 each. Petitioner employed F. D. Presley, an accountant, to prepare the 1949 partnership and individual income tax returns. Presley personally did not prepare the returns. They were prepared by his daughter, Frances P. Bailey, from information supplied by Paul. When Frances prepared the returns she was not aware that the two houses on Tilson Road were the residences of the petitioners or that the cost of these two houses was charged to partnership expenses. The petitioners did not keep a set of partnership books for 1949. At the end of the year Frances prepared a detailed check analysis covering the entire year. This check analysis is comparable to a cash journal and consisted of 55 sheets of 11-column paper and a recapitulation sheet. The information *320 reflected on the 1949 partnership return is the same as that shown on the recapitulation sheet attached to the journal. The total cost of materials as shown on the partnership return and on the recapitulation sheet for the year 1949 was $172,862.17. The amount of material expense accounted for on the 55 sheets of the journal was $141,055.59, leaving a difference between the check analysis and the partnership return of $31,806.58. Paul gave Frances a book purporting to list cash payments which appeared to account for the overstatement. She was not supplied with invoices or other evidences which would substantiate cash expenditures for building materials in the amount of $31,806.58. The totals of the other columns of the check analysis were approximately the same as the totals shown on the recapitulation sheet, the differences amounting to only $631.99. The 55th sheet of the check analysis and the recapitulation sheet were missing at the time of trial, but were in existence in 1953 when the records were audited by the investigating officers. At that time adding machine tapes of all sheets were made and from those tapes the 55th sheet was reconstructed in order to arrive at the totals *321 on the various expense columns. Paul and B. J. contributed materials to their church during 1949 and the cost of these materials was absorbed in the cost of the houses built and sold in that year. In 1950, the petitioners' only source of income was from partnership No. 2. Partnership No. 2 built 71 houses in 1950 and sold 70 of them for $9,650 each for total sales receipts of $675,500. The total gross receipts reported on the 1950 partnership return was $675,500. The one house which was not sold during the year was the personal residence of B. J. and Auline Martin at 3151 Tilson Road. The partnership books for the year 1950 were kept by Ruth Hobby who at that time was Ruth Manning. Ruth was a part-time employee of the partnership and prepared the books in the evening at her home. The books consisted of a cash journal and a general ledger which remained in her home until they were turned over to the petitioners at the end of the year. The cash journal was a record of cash receipts and disbursements. The columns in the journal were footed and the totals posted monthly in the general ledger. Both the cash journal and the general ledger for the year 1950 were missing at the time *322 of trial. Ruth made entries on the books from information supplied to her by Paul in the form of oral information, checks, check stubs, bank statements and bank deposit slips. Paul made all notations on the check stubs. Ruth posted every item that went in and out of the bank and did not disregard or eliminate any alleged expense. She never saw any invoices and advised Paul to keep invoices to substantiate alleged purchases made personally for the partnership. Partnership No. 2's returns for 1950 and 1951 along with the joint income tax returns of the petitioners for 1950 and 1951 were prepared by Don P. Walker. The amount of building materials expense claimed on the 1950 return of partnership No. 2 was $305,205.68, while the cost of materials as shown on the partnership's books and records was $301,646.87. On October 19, 1950, partnership No. 2 issued check No. 2992 to B. J. Martin in the amount of $16,000. The explanation on the check stub is "Property Paid in Full." This expenditure was charged to building materials expense on the books of partnership No. 2 for 1950 and claimed as a materials expense on the partnership return for that year. Both B. J. and Paul endorsed *323 the check and Paul cashed the check on October 26, 1950, at the Fulton National Bank. On October 26, 1950, Paul made a $20,000 deposit in the account of No. 2 partnership at the East Atlanta Bank. The house and lot at 3175 Tilson Road, was traded to Arthur Brand in June 1950 in exchange for a 12-acre tract of land and an old farmhouse which were deeded to partnership No. 2. There was no money involved in this transaction. In October of 1950 the partnership issued a check to E. J. Faust in the amount of $3,451. This amount was charged to building materials expense on the partnership's books. This check was not used to purchase building materials but was actually a loan to Faust. In the same month a check was issued to Grey Skelton in the amount of $2,605. This was also charged to building materials expense but was actually payment for four lots purchased in 1950, but not developed or sold by the partnership during that year. On May 24, 1950, partnership No. 2 issued a check to W. C. Cobb in the amount of $826.25. This amount was charged to building materials expense on the books of the partnership. Of this amount, $800 was for the purchase of a lot and $26.25 was for legal fees. *324 The lot was not sold until 1951. On July 7, 1950, the partnership issued a check to Cobb and Cobb in the amount of $115. This expenditure, which was charged to building materials expense, was to cover a title fee on property acquired from Arthur Brand in 1950 but not developed or sold until 1951. In July 1950 a house was built by partnership No. 2 at 3151 Tilson Road at a cost of $10,000 and claimed as an expense on the partnership tax return of 1950. B. J. and Auline lived at this house from the time it was completed until their moving to Alabama in 1953. On September 13, 1950, Paul and Mary Martin deeded the lot at 3151 Tilson Road to B. J. On June 26, 1950, the partnership issued check No. 2623 payable to Marvin Griffin in the amount of $250. The explanation on the check stub was "materials." This expenditure charged to building materials on the books of partnership No. 2 was actually a political contribution. A check in the amount of $600 was issued to Koolvent Metal Company in August of 1950. This amount was charged to building materials expense for 1950. The payment was actually for awnings which were attached to the houses at 3159 Tilson Road and 3151 Tilson Road at a *325 cost of $300 to each house. During the year 1950 partnership No. 2 issued the following checks to Paul A. Martin: Date
Check No.
Amount
3-12-50
2062
$ 35.00
4-21-50
2252
6.35
6- 8-50
2514
54.08
7-13-50
2726
70.85
7-27-50
2804
159.10
8- 3-50
2835
74.03
8-14-50
2872
555.87
8-17-50
2878
511.74
9- 1-50
2906
105.55
9-26-50
2954
1,159.16
10-11-50
2978
42.96
11- 6-50
3013
618.08
12- 8-50
3053
736.61 These checks were charged to building materials expense on the books of the partnership for 1950. There were no invoices or other supporting documents to substantiate these expenditures, although attached to some of the check stubs were adding machine tapes totaling the amount of the individual check. During 1950 the partnership issued the following checks to B. J. Martin
Date Check No. Amount 4-21-50 2251 $ 72.30
5-19-50 2416 150.00
5-25-50 2438 150.00
7- 7-50 2704 69.50
7-13-50 2725 312.50
9-12-50 2941 331.69
12-18-50 3054 105.71 These checks were charged to building materials expense for 1950. There were no invoices or other supporting documents to substantiate these. There were, however, adding machine tapes for some *326 of the checks. During 1950 partnership No. 2 issued the following checks: Payee
Amount
East Atlantic Bank
$3,500.00
Chas. S. Martin Distributing
Co.
156.32
Georgia Power Company
766.68
Jenkins Key Co.
31.70
Georgia Automatic Gas Co.
18.90
Norton Photographers
50.00
Cobb and Cobb
28.60 These checks were charged to building materials expense on the books and records of the partnership for 1950. There were no invoices or other supporting documents to substantiate these expenditures. Partnership No. 2 issued two checks in 1950 payable to Paul and B. J. Martin. The first check, No. 2215, dated April 11, 1950, was in the amount of $1,033 and the second check, No. 2311, dated May 2, 1950, was in the amount of $190.27. These expenditures were charged to building materials on the books of the partnership and were not substantiated by invoices or other supporting documents. Adding machine tapes were attached to the check stubs. On December 27, 1950, a check was issued to J. F. Senn in the amount of $2,000. The explanation on the check stub is "Bonus." This amount was charged to "Donations, Utilities and Miscellaneous Costs" on the books and records of the *327 partnership for 1950. The $2,000 was reported as "Bonus-Christmas" expense on the 1950 partnership return. Senn is the father-in-law of Paul. Paul had stated to a revenue agent that Senn had only worked for the partnership approximately two weeks and the $2,000 payment was to keep Senn from living in Atlanta. The partnership of Martin and Martin (partnership No. 2) was not dissolved in 1951. Paul and Mary reported one-half and B. J. and Auline reported one-half of the partnership's net income on their respective joint income tax returns for the year. During the year 1951 the petitioners' only source of income was from partnership No. 2. Partnership No. 2's books for the year 1951 were prepared by Ruth Hobby. The books were of the same nature as the ones prepared by Ruth in 1950 consisting of a cash journal and a general ledger. The journal was a record of receipts and disbursements and the columns were footed and totals posted monthly to the general ledger. The journal and ledger for the year 1951 were missing at the time of the trial as were the checks and check stubs. During 1951 the partnership built two duplex houses, one at 3067-3069 Cannon Street and the other at 627-629 Glen *328 Iris Drive, both in Decatur, Georgia. Each of these houses contained at least two apartments and the total cost of these houses as reflected on the partnership return was $30,317.63. These two houses were not sold in 1951, but were held as rental property. In 1951 the land known as the Brand property was sold for a total sales price of not less than $30,100. On March 17, 1951, partnership No. 2 issued a check payable to B. J. in the amount of $10,000. This expenditure was charged to the cost of the Brand property on the books and records of the partnership for 1951. According to a notation on the face of the check it was for a house at 3442 McAfee Road, which was the old farmhouse located on the Brand property when partnership No. 2 acquired it in 1950. B. J. personally never owned this house which was in fact owned by partnership No. 2 and was traded to J. W. Toney in 1950 for work done in improving and subdividing the Brand property. The $10,000 check was not to buy B. J.'s interest in the partnership. The partnership was not dissolved in 1951. Paul telephoned Presley during the latter part of 1952 and told him Remillard would be around to see him. He told Presley to tell Remillard *329 that information had been lost. Presley knew of no lost information. The 55th sheet was missing when respondent's agent examined the check analysis after the conversation between Paul and Presley. Neither Presley nor Frances advised petitioners to carry the two houses at 3159 and 3175 Tilson Road on a cash basis or to deduct the cost of the two houses during 1949 and to report the profit from the sale of the two houses when sold in another year. The income tax returns of petitioners Paul A. and Mary L. Martin for the years 1949, 1950, and 1951 were false and fraudulent and were made with intent to evade tax. Part of the deficiency with respect to Paul A. and Mary L. for each of said years is due to fraud with intent to evade tax. The income tax returns of petitioners B. J. and Auline Martin for the years 1949, 1950, and 1951 were false. There is no clear and convincing evidence, however, that said returns were fraudulent or filed with intent to evade tax. There is also no clear and convincing evidence that any part of any of the deficiencies of B. J. and Auline was due to fraud with intent to evade tax. B. J. supervised the laborers on the construction jobs. He wrote no checks, *330 collected no money, and had nothing to do with the books and records. He left the business affairs of the partnership to Paul. Opinion Deficiencies - General As will appear from both our Findings and from our discussion, infra, we have found that the returns of B. J. and Auline in question were not L. Martin for the years 1949, 1950, and 1951 were false and fraudulent and were made with intent to evade tax. Part of the deficiency with respect to Paul A. and Mary L. for each of said years is due to fraud with intent to evade tax. The income tax returns of petitioners B. J. and Auline Martin for the years 1949, 1950, and 1951 were false. There is no clear and convincing evidence, however, that said returns were fraudulent or filed with intent to evade tax. There is also no clear and convincing evidence that any part of any of the deficiencies of B. J. and Auline was due to fraud with intent to evade tax. B. J. supervised the laborers on the construction jobs. He wrote no checks, collected no money, and had nothing to do with the books and records. He left the business affairs of the partnership to Paul. Opinion Deficiencies - General As will appear from both our Findings *331 and from our discussion, infra, we have found that the returns of B. J. and Auline in question were not fraudulent, and no part of their deficiencies was due to fraud with intent to evade taxes. As a consequence, the deficiencies determined against B. J. and Auline for the years 1949 and 1950 are barred by limitations. The issue of limitatations is not raised by them as to 1951. Since the bases for determination of deficiencies are the same, with respect to Paul A. and Mary L., as with respect to B. J. and Auline (except as to the element of fraud, which we find applicable to Paul A. and Mary L. for all three years involved, in accordance with our discussion infra) we may save time by joint consideration of the factor of deficiencies of all petitioners involved. Deficiencies - 1949 The petitioners' only source of income in 1949 was from the partnership of Paul A. and B. J. Martin. The principal business of the partnership for the year in question was the building of residential houses for sale. The partnership reported $347,450 gross receipts from the sale of houses during this year. Thirty-two of the houses were sold for $9,750 each and the remaining 4 were sold for $8,800 each. *332 The proceeds from the sale of these 36 houses account for $347,200 of the total gross receipts reported by the partnership. The remaining $250 represents unexplained small amounts amounts of cash received by the partnership at various times during the year. The petitioners did not keep a set of partnership books for 1949. At the end of the year, however, Frances (who prepared the partnership return) prepared a detailed check analysis covering the entire year which was complete and accurate to the extent of the information furnished to her. It consisted of 55 sheets of 11-column paper and a recapitulation sheet. Respondent disallowed as an expense item the entire cost of constructing two houses which were in fact personal residences of the petitioners, the cost of which was not deductible as an expense of the partnership. The two houses were located at 3159 and 3175 Tilson Road. Paul A. and Mary L. lived at 3159 Tilson Road from 1949 to 1955 and B. J. and Auline lived at 3175 Tilson Road from 1949 until June of 1950 when they moved into another house built by the partnership where they lived until 1953. We sustain the respondent in disallowing the deduction of the cost of the *333 two houses occupied by the partners in 1949 because of the obvious fact that such cost was not an expense of the partnership. The cost of the two houses was necessarily estimated because petitioners did not keep separate records or segregate the cost of any of the 38 houses which the partnership built in 1949. The cost was determined by estimating that the cost of materials for each house was $5,000 and that the cost of materials was 50 percent of the total cost of building each house. We think this approach is quite reasonable. We sustain respondent's determination of overstatement of cost of land by $4,245. The cost of land as shown on the 1949 return was $25,750. Actually, only $21,505 was properly attributable to cost of land. Petitioners have failed to show error in respondent's determination insofar as it limits the cost of land in 1949 to $21,505. We likewise sustain respondent's disallowance of $32,801.40 as an overstatement of cost of building materials for 1949. The partnership return claimed materials expense in the amount of $172,862.17 while the check analysis or journal showed a total of $141,055.59. Petitioners were unable to account for the discrepancy and failed *334 to meet the burden of proof or error in respondent's determination. Respondent disallowed the deduction $500of as estimated cost of materials contributed by petitioners to their church (since they had elected to use the standard deduction). Petitioners do not deny that a contribution was made or that the cost was charged to partnership expense. The amount was estimated. The item is de minimus, but there is no reason to believe that the estimate was unreasonable, and in any event, petitioners have failed to prove error in respondent's determination in this respect. We therefore sustain respondent. Respondent disallowed a deduction of $494.82 claimed as materials expense. The money was used to purchase a power saw and filing cabinet. Those items were properly capitalized by respondent. Other minor adjustments were made by respondent for 1949, but, since petitioners offered no evidence in connection therewith, we hold that the presumption of correctness of the determination requires us to hold for respondent as to the items in question. Deficiencies - 1950 During 1950, the partnership again overstated the cost of building materials in the amount of $34,943.80. The largest *335 specific item disallowed by respondent was a $16,000 check payable to B. J. The check stub indicated it was for "Property Paid in Full." It was entered on the books in the material column. The check was endorsed by both B. J. and Paul. The latter admitted that he personally cashed the check. We need not go into the details of Paul's inconsistent statements as to this item. An example is the story that the purpose of the check was to reimburse B. J. for trading his home at 3175 Tilson Road for a 12-acre tract of land and an old frame house which was deeded to the partnership. The facts show, however, that B. J. did not receive the proceeds of the $16,000 check. Moreover, when B. J. traded 3175 Tilson Road, he immediately moved into another house built by the partnership, the cost of which was charged to partnership. We think that the affirmative evidence supports the view that the $16,000 check represented a withdrawal of profits by Paul. In any event, it was neither a materials expense item nor a payment to B. J. for property. We may add that Paul's obvious untruths could not be taken as sufficient to sustain the burden of proof of sustaining error on the part of respondent in *336 disallowing this item, and we find no other acceptable evidence to support the burden. The second 1950 item of materials expense disallowed was a check to E. J. Faust in the amount of $3,451. Since the check was actually a loan to Faust and was not used to purchase materials, it is clear that respondent must be sustained. While the next item to be considered is trifling in amount, we mention it because of its reflection on treatment of other items. Check No. 2623, issued to Marvin Griffin in the amount of $250 and charged to materials expense was actually a political contribution. We sustain respondent. Respondent disallowed a deduction of $600 paid to Koolvent Metal Company. The explanation on the check was "materials," but the payment was in fact for awnings on the two Tilson Road houses occupied as personal residences by petitioners. Respondent is sustained. Respondent disallowed the deduction of a check for $766.68 which was charged by the partnership to materials expense. The expenditure was in fact for appliances which were installed in the Tilson Road houses occupied by petitioners. Respondent is sustained. We see no reason to discuss an item of $115 evidenced by a *337 check to Cobb and Cobb. Respondent disallowed the item in 1950 but allowed it in 1951. We sustain respondent. A check in the amount of $2,605 was charged by the partnership to building materials expense. It was actually paid by Grey Skelton for four lots purchased in 1950 but neither developed nor sold by the partnership in 1950. Respondent's disallowance is sustained. A check for $826.25 payable to W. C. Cobb was charged to building expense. The check stub showed "legal fees." $800 of this amount was for the purchase of the lot, and $26.25 was for legal fees. The lot was sold by the the partnership in 1951 and is allowed in that year. Respondent is sustained. Respondent disallowed 22 checks issued to Paul or B. J. or both. The checks were charged to building expense. Petitioners had no invoices or other significant supporting evidence. A few of the stubs had adding machine tapes attached, but these did not establish the purposes for which the checks were issued. We sustain respondent because of want of substantiation on the part of petitioners. Respondent also disallowed as building material expense, the following checks: Date
Check No.
Amount
Payee
1-13-50
1762
$3,500.00
East Atlanta
Bank
5-25-50
2436
156.32
Chas. S. Martin
Distrib. Co.
7- 5-50
2672
31.70
Jenkins Key
Company
7-13-50
2727
18.90
Ga. Automatic
Gas Co.
10- 2-50
2960
50.00
Norton Photog-
raphers
10-10-50
2977
28.60
Cobb and Cobb
*338 The only substantiation offered was the unsupported testimony of Paul. We think it apparent from the whole record that Paul is unworthy of belief. Moreover, by 1950, at least he was well aware of the requirement to keep invoices and like supporting data to substantiate the partnership expenditures. Under the circumstances, we think respondent was justified in disallowing the items in question and that petitioners have failed to meet the burden of proving error by respondent. We sustain the disallowance. Respondent disallowed a deduction of $2,000 paid to J. F. Senn, father-in-law of Paul. The explanation on the check stub indicated that the $2,000 was paid to Senn as a bonus. The expenditure was charged to "Donations, Utilities and Miscellaneous Costs" on the partnership books and was claimed as "Bonus-Christmas" expenses on the 1950 partnership return. Paul told a revenue agent that his father-in-law had worked for the partnership for two weeks and the $2,000 was paid to keep Senn from living in Atlanta. It is clear that the only possible part of the payment deductible for tax purposes was compensation for the two weeks of services alleged to have been rendered by Senn. Assuming *339 (although we do not so hold)that Senn did render services for two weeks, there is no evidence of the amount paid him therefor, or the reasonable value of such services. Under the circumstances, we sustain the disallowance. In 1950, petitioners charged the cost of another personal residence (occupied by B. J.) to the partnership. The entire cost was absorbed in the cost of building 70 houses ultimately sold by the partnership. The house was located at 3151 Tilson Road. We think the amount (estimated) of $10,000 was properly disallowed, the petitioners have failed to meet the burden of proving error in respondent's determination. The following adjustments were also made by respondent for 1950: Adjustment
Amount
Taxes overstated
$ 327.86
Depreciation overstated
780.48
Truck maintenance overstated
1,982.40
Utilities overstated
297.97
Miscellaneous expenses overstated
8.27
Attorney fees overstated
100.00
Capitalized tools charged to expense
1,000.00
As to these items, respondent's determinations are presumed to be correct and petitioners have offered no evidence upon which we might find error. We therefore sustain respondent. Deficiencies - 1951
*340 Respondent disallowed a deduction of $30,317.63 which represents the cost of building two duplex houses. The entire cost of constructing the duplex houses was charged to partnership expense for 1951. The duplexes, however, were not sold during this year, and in fact were rented in 1951. Respondent's determination is sustained. Respondent determined that petitioners overstated cost of land in 1951 by $10,000. The expenditure of $10,000 was evidenced by a check in that amount dated April 17, 1951, payable to B. J. According to a notation on the check, it was paid to B. J. for a house at 3442 McAfee Road. This was the old frame house which was on the Brand property when it was acquired in 1950. The Brand property, including the house at 3442 McAfee Road, however, was acquired in 1950 in a trade for B. J.'s house at 3175 Tilson Road and there is no acceptable evidence that there was any occasion to pay $10,000 out of partnership funds to B. J. The conflicting affidavit and testimony by Paul in this connection are not worthy of belief. We sustain respondent's determination. Petitioners also understated income from the sale of the Brand property in 1951. The partnership returned $20,118.75 *341 as income from the sale. The precise amount of the correct sales price is not ascertainable but is at least $30,100. We accept this as the amount to be included in gross income and to this extent sustain respondent. The remaining adjustments for 1951 are not substantial. We sustain respondent in this respect in the absence of evidence establishing error on respondent's part. Fraud The respondent has determined additions to tax provided in section 293(b) [2] of the 1939 Code for fraud for the years 1949, 1950, and 1951 as to all petitioners. The respondent, on this issue, has the burden of proving by clear and convincing evidence that there is some deficiency in the year or years in question, some part of which in each year is due to fraud with intent to evade taxes. Respondent is not permitted to rely upon *342 his own determination as a basis for sustaining his burden. On the other hand, neither he nor we are limited to or circumscribed by his own evidence. In deciding the issue, we may consider the entire record properly before us. Respondent may rely upon circumstantial evidence and need prove only that some part of each deficiency in issue is due to fraud. . An affirmative willful attempt to defeat and evade income tax may be inferred from conduct such as false entries or alterations in the books and records, false invoices or documents, concealment of assets, covering up sources of income, failure to keep records usual in the carrying on of a business, and, in general, any conduct the likely effect of which would be to mislead or to conceal. . That there was fraud with intent to evade taxes in this case in all three years involved, we think is quite apparent from the record. We think it would serve no useful purpose to reanalyze and discuss at length our Findings, or to repeat and elaborate upon our discussion of deficiencies. Eliminating all items of the deficiencies which depend *343 on respondent's determination, we nevertheless find abundant evidence of fraud. We need only refer briefly to the consistent and persistent overstatement of cost of building materials in all three years; the treatment of the cost of the Tilson Road properties for 1949; the Faust, Griffin and Senn items for 1950; and the overstatement of cost of land in 1951; to arrive at the necessary conclusion that there was fraud in each year. The next question is what person or persons committed the fraud. There is no doubt in our minds that Paul was one of those persons. He was the partner in charge of all expenditures, wrote all checks, received all funds, took charge of the bank accounts and acted as general manager of the business. A detailed discussion of the testimony is not necessary. We need only add that an examination of the entire record leads to the necessary inference that Paul was fully aware that the frauds were being committed, and caused or participated in them. It is likewise clear that his actions in this respect occurred in all of the years in question. We therefore conclude that some part of the deficiency in each of the years in question was due to fraud on the part of *344 Paul, whose returns were likewise false and fraudulent with intent to evade taxes. While no fraud is suggested with respect to Mary L., since joint returns were filed, she is jointly and severally liable with Paul. As to B. J., the situation appears to be quite different. B. J. wrote no checks, collected no money, made no deposits, and had nothing to do with the books and records. He did little, if anything, more than supervise the laborers on the job. He appeared to rely upon Paul to handle the business affairs of the partnership other than supervising construction, and apparently did what Paul told him or left matters to Paul without question. While we are not convinced of B. J.'s complete innocence, we must conclude that, as to B. J., the respondent has failed to meet his burden of proving by clear and convincing evidence that some part of the deficiencies applicable to B. J. and Auline were due to fraud with intent to evade taxes during the years in question or that any of their returns for those years was fraudulent with intent to evade taxes. Limitations Since we have held that Paul and Mary L. filed false and fraudulent returns with intent to evade taxes for all years *345 in issue, the bar of the statute of limitations is not open to them. Sec. 276(a) of the Code of 1939. As to B. J. and Auline, however, we have found no fraud in any year. Accordingly, limitations apply for the years 1949 and 1950. There appears to be no issue before us in relation to limitations for 1951. Additions to Tax It is apparent on the basis of our rulings supra that additions to tax under section 293(b) are applicable to Paul and Mary L. for all years in issue. Conversely, no such additions are applicable to B. J. and Auline for any year. It is also apparent that additions to tax under section 294(d)(1)(A) are applicable to B. J. and Auline, as well as Paul and Mary L. for the year 1951 since no evidence was adduced in relation thereto to support an inference that respondent's determination was erroneous. Additions to tax determined as to B. J. and Auline under section 294(d)(2), for the year 1950 are not to be applied in view of our holding as to them that the deficiency determined for that year is barred by limitations. . Additions under that section are, however, applicable to Paul and Mary L. for 1950. *346 Respondent concedes that additions to tax under section 294(d)(2) are not to be applied for 1951 in dockets 68808 (B. J. and Auline) or 63832 (Paul and Mary L.). Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Paul A. Martin and Mary L. Martin, Docket No. 63832; B. J. Martin and Auline Martin, Docket No. 94362, and Paul A. Martin and Mary L. Martin, Docket No. 94363.↩
2. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩